United States District Court
Southern District of Texas
**ENTERED**
October 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DANA BOWMAN, § | |
| § | |
| Plaintiff. § | |
| § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:19-CV-00066 |
| § | |
| PRIDA CONSTRUCTION, INC., § | |
| ET AL., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

In cross-motions for partial summary judgment, I am presented with the narrow question of whether an individual with disabilities who visited an apartment complex and viewed one available unit and common areas has standing to sue for remediation of not just the one unit he visited, but also other units and common areas at the apartment complex. Given the Fair Housing Act's broad language, remedial purpose, and reliance on private litigants to ensure compliance, I conclude that an individual has standing to pursue injunctive relief as to those barriers personally encountered as well as those discovered through the course of litigation.

### BACKGROUND

Plaintiff Dana Bowman ("Bowman") is a retired Sergeant First Class in the United States Army. He was a Special Forces soldier and a member of the Army's elite parachute team, the Golden Knights. While performing for the Golden Knights, he lost the lower halves of both legs in a mid-air collision. Today, Bowman gets around with the assistance of prosthetic legs and a wheelchair.

In recent years, Bowman has become well-known as a serial litigator. In the last seven years alone, Bowman has filed more than 100 lawsuits across the United States against businesses allegedly operating in violation of the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"), as amended. As an advocate for people with disabilities, Bowman insists that he has "a strong interest in enforcement of accessibility requirements for all disabled persons." Dkt. 36-7 at 2.

The Waterfront Apartments ("the Property") is a four-story apartment complex located in Galveston, Texas. Built in 1997, the Property contains 75 one- to three-bedroom units, a two-story leasing office, lobby, fitness center, swimming pool, and conference room. Defendant Waterfront Housing, LLC is the current owner of the Property. Defendant Prida Construction, Inc. is the former owner and builder/developer of the Property.

Bowman visited the Property on February 5, 2019. He met a leasing agent, held himself out as a prospective renter, and asked to view the Property. The leasing agent informed Bowman that there was only one unit available in the complex for rent. The other 74 units were already under lease and would be for some time. With that understanding, the leasing agent took Bowman to look at an example of the unit available for rent. After viewing the rental unit, Bowman asked if he could visit the mailbox area. The leasing agent agreed and took him to the mailbox area for a short inspection.

Bowman claims that he observed accessibility barriers that would interfere with his ability to access and use the facilities while in a wheelchair. The observed barriers included a lack of accessible routes between the buildings and site facilities, an

inaccessible central mailbox area, lack of level surface and/or clear space for maneuvering at some gates, narrow interior doors in units, high thresholds at doors on the interior side of some units, and high thresholds at the patio doors. Bowman says that he decided not to rent an apartment at the Property because, unlike persons without disabilities, he could not independently use the Property's features.

On February 14, 2019, less than a week after visiting the Property, Bowman filed a complaint in the United States District Court for the Southern District of Texas—Galveston Division. Bowman alleges that he was injured by the Defendants' discriminatory practices and failure to design and/or construct apartments with accessible and useable features for people with disabilities, as required by the FHA. These alleged injuries arose from encountering discriminatory barriers at the Property. Bowman seeks monetary, declaratory, and injunctive relief. Bowman claims that without injunctive relief, he and others will continue to be unable to fully access and use the Property in violation of their rights under the FHA.

After the lawsuit was filed, Bowman's expert, Larry B. Fleming ("Fleming"), inspected the Property. He prepared a 53-page expert report (the "Fleming Report"), which asserts that the Property does not meet the design and construction requirements of the FHA. The Fleming Report describes a lack of accessible routes, inaccessible features in public and common areas, and barriers in dwelling units. By way of example, the alleged FHA violations include lack of signage for accessible parking spaces, excessive running slopes, fire extinguishers mounted too high, stairs lacking handrails, lack of marked crosswalks, improperly designed handrails, and inaccessible restroom features. All told, Fleming originally identified 102 separate violations of the

FHA. He has revised his findings and now maintains that there are 97 FHA violations at the Property. These purported violations occurred not only in areas Bowman personally viewed, but also in spaces that Bowman did not encounter or see during his sole visit to the Property.

Defendants retained Brian Stanton Associates, LLC ("Stanton") to inspect the Property and opine on whether the Property complies with the FHA. Stanton produced a detailed expert report which described the Property and addressed the alleged FHA violations raised in the Fleming Report. Although Stanton criticized Fleming for numerous errors and inconsistencies in his report, Stanton acknowledged that there were some "technical violations" of the FHA. Dkt. 36-5 at 3. "While mostly minor, these technical violations have been corrected or are in the process of being corrected." *Id.* Of the alleged FHA violations set forth in the Fleming Report, Stanton does not dispute 77 of the findings.

Both sides have filed partial motions for summary judgment. Bowman's motion asks me to grant summary judgment as to liability and order Defendants to promptly submit a detailed plan to remediate each of the undisputed FHA violations. Defendants' motion, on the other hand, argues that Bowman lacks Article III constitutional standing to seek relief.[1] It is Defendants' position that Bowman did not suffer an injury in fact because he did not personally witness or physically encounter many of the FHA violations outlined in the Fleming Report.

---

[1] Bowman also filed Objections and Motion to Strike Defendants' Reply in Support of Defendants' Motion for Partial Summary Judgment. *See* Dkt. 46. Bowman's objections are OVERRULED, and the motion to strike is DENIED.

## FAIR HOUSING ACT

The FHA is a civil rights statute passed in 1968 with the express purpose of remedying housing discrimination. *See Otero v. N.Y. City Hous. Auth.*, 484 F.2d 1122, 1133 (2d Cir. 1973). The original statute only prohibited discrimination on the basis of race, color, religion, or national origin. In 1988, Congress amended the FHA to extend its protections to a broad range of persons with disabilities.[2] Thereafter, it became unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The FHA also prohibits "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." *Id.* § 3604(f)(2).

In extending the reach of the FHA to cover people with disabilities, Congress recognized that architectural inaccessibility

> can be just as devastating as intentional discrimination. A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed."

---

[2] Courts across the country have recognized that the goal of the 1988 FHA amendments was to require developers to provide accessibility in newly constructed buildings to a broad range of individuals with varying disabilities. *See United States v. Tanski*, No. 1:04-CV-714, 2007 WL 1017020, at *14 (N.D.N.Y. Mar. 30, 2017) ("[A] plain reading of [the FHA] demonstrates that it requires compliance with an objective accessibility standard broadly applicable to handicapped people."); *Equal Rights Ctr. v. Equity Residential*, No, CCB-06-1060, 2016 WL 1258418, at *12 (D. Md. Mar. 31, 2016) ("The design and construction provisions are intended to ensure that a property will be accessible for *all* prospective disabled tenants.") (emphasis added); *Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 250 F. Supp. 2d 706, 720 (W.D. Ky. 2003) (recognizing that compliance with the FHA's design and construction requirements requires properties to be "reasonably accessible to *most* handicapped persons") (emphasis added).

H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186. To put an end to this form of housing discrimination, the FHA sets forth key elements of accessibility required for new residential construction, and then delegates the responsibility of establishing specific standards satisfying those requirements to the Department of Housing and Urban Development. *See* 42 U.S.C. §§ 3604(f), 3608(a).

The FHA mandates that every multifamily apartment building containing four or more units and built for first occupancy after March 13, 1991, comply with certain requirements that ensure a minimum level of accessibility to individuals with disabilities. *See id.* § 3604(f)(3)(C), (7). Specifically, covered buildings must be designed and constructed such that:

>   (i)   the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;
>
>   (ii)  all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and
>
>   (iii) all premises within such dwellings contain the following features of adaptive design:
>
>   >   (I)   an accessible route into and through the dwelling;
>   >
>   >   (II)  light switches, electric outlets, thermostats, and other environmental controls in accessible locations;
>   >
>   >   (III) reinforcements in bathroom walls to allow later installation of grab bars; and
>   >
>   >   (IV)  usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

*Id.* § 3604(f)(3)(C). A unanimous Supreme Court has described the FHA's language as "broad and inclusive" and has stated that the FHA implements a "policy that Congress considered to be of the highest priority," which can be given effect "only by

6

a generous construction" of the statute. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 211, 212 (1972).

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hawes v. Stephens*, 964 F.3d 412, 415 (5th Cir. 2020) (quoting FED. R. CIV. P. 56(a)). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The moving party . . . bears the initial responsibility of informing the district courts of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks and citation omitted). If "the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017) (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010)). "Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quotation marks and citation omitted). "The party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotations marks and citations omitted).

"In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted). "On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that Bowman lacks Article III standing to pursue claims for FHA violations that he did not personally encounter on his visit to the Property, including certain violations first discovered by his expert witness after he filed this lawsuit.

**A.     THE LAW OF STANDING**

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Article III of the Constitution confines the judicial power of the federal courts to deciding cases or controversies. *See* U.S. CONST. art. III, §2, cl. 1. The standing doctrine is derived directly from this constitutional provision. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (quotations marks and citation omitted).

"Standing" is a jurisdictional requirement. In fact, Article III standing represents "perhaps the most important" of all jurisdictional requirements. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks and citation omitted). This doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks, emphasis, and citation omitted). *See also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

To meet the constitutional minimum for standing, a plaintiff has the burden to establish the following:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). This well-known three-prong test applies to all types of cases, including claims brought under the FHA. *See Galveston Open Gov't Project v. U.S. Dep't of Hous. & Urban Dev.*, 17 F. Supp. 3d 599, 602 (S.D. Tex. 2014) (Costa, J.). To give full effect to the broad remedial purposes of the FHA, and to encourage its enforcement by private litigants, Congress intended "to define standing [under the FHA] as broadly as is permitted." *Trafficante*,

409 U.S. at 209. *See also Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (The "sole requirement for standing under the FHA is the Article III minima.").

**B. THE INJURY IN FACT REQUIREMENT**

Defendants challenge Bowman's standing with respect to the first Article III requirement—injury in fact. The purpose of the injury in fact requirement is to ensure that a plaintiff has a "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation marks and citation omitted). "To establish injury in fact, a plaintiff must show . . . 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotation marks and citation omitted).

In his Complaint, Bowman alleges that he observed accessibility barriers while visiting the Property that would interfere with his ability to access and use the facilities. This easily satisfies the injury in fact requirement. Bowman alleges distinct and palpable injuries that are "fairly traceable" to Defendants' failure to ensure that the Property was accessible to a person with disabilities. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977). Although Bowman certainly has standing to sue for the accessibility barriers he personally witnessed or encountered on his February 5, 2019, visit to the Waterfront Apartments, Defendants contend that Bowman lacks constitutional standing to seek monetary and injunctive relief with

respect to those units and common areas of the Property that Bowman did not personally inspect.

To begin, I make the unremarkable observation that private litigants are the primary method of obtaining compliance with the FHA. *See Trafficante*, 409 U.S. at 209. Recognizing "the enormity of the task of assuring fair housing," the Supreme Court has stated that private litigants act "not only on their own behalf but also as private attorneys general in vindicating a policy that Congress considered to be of the highest priority." *Id.* at 211 (internal quotation marks omitted). To effectuate the underlying purpose of the FHA, the statute "permits any 'aggrieved person' to bring a housing-discrimination lawsuit." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017) (quoting 42 U.S.C. § 3613(a)). The statute defines "aggrieved person" as "any person who" either "claims to have been injured by a discriminatory housing practice" or believes that such an injury "is about to occur." 42 U.S.C. § 3602(i). In a series of cases over the years, the Supreme Court has repeatedly held "that the FHA's definition of person 'aggrieved' reflects a congressional intent to confer standing broadly." *Bank of Am. Corp.*, 137 S. Ct. at 1303.

Just how broadly standing extends under the FHA is evident by taking a look at the four instances in which the Supreme Court has addressed the FHA's standing question in the context of a private enforcement action. *See Bank of Am. Corp.*, 137 S. Ct. at 1304–05 (concluding that a city had standing to bring a FHA claim against a lender engaged in a decade-long pattern of racially discriminatory lending in the residential housing market that caused the city economic harm); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (recognizing standing for "testers"—that is,

11

"individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence"—against a real estate broker who was engaging in racial steering practices); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115–16 (1979) (finding that a municipality and four of its residents were allowed to sue local realtors for the harm to the town's racial balance caused by steering white and black homeseekers to different neighborhoods); *Trafficante*, 409 U.S. at 211–12 (holding that white tenants of an apartment complex had standing to sue the landlord for discrimination against minority applicants, which deprived the plaintiffs of the right to live in an integrated community). Taken together, these standing decisions support a conclusion that the sweep of the FHA is extremely broad and generous.

The Supreme Court's express language in *Gladstone Realtors* resolves the standing issue in this case. Because "Congress intended standing under [the FHA] to extend to the full limits of Art. III, . . . as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed." *Gladstone Realtors*, 441 U.S. at 103 n.9. That is exactly the situation here. As a veteran with a disability seeking to remove barriers he personally encountered while touring the Property, Bowman may sue to vindicate not only those injuries that are direct and particular to himself, but also those shared by a large class of citizens facing similar accessibility barriers at the same property.

Numerous lower courts across the country have followed the Supreme Court's guidance and recognized that FHA plaintiffs have standing to sue to remove those barriers on a property that the plaintiff observed at the time of the site visit, as well as

those barriers unearthed during the discovery process. As expressly noted by one court considering a similar FHA case brought by a private litigant: "district courts have not limited the grant of injunctive relief to those areas of the premises initially observed by the plaintiff, and [have] ordered remediation of violations discovered by later expert inspection." *Morgan v. Parc Plaza Dev.*, L.P., NO. 3:17-CV-0492-G-BK, 2018 U.S. Dist. LEXIS 225190, at *7 (N.D. Tex. Feb. 8. 2018) (citing *Morgan v. W. Rim Invs. 2013-3, L.P.*, No. 4:16-CV-00454, 2017 WL 6734175, at *6 (E.D. Tex. Nov. 21, 2017) (recommending partial summary judgment in favor of plaintiff and that defendants be ordered to submit a detailed remedial plan to eliminate all FHA violations, not simply those that were alleged in plaintiff's complaint); *Bowman v. RLB Inv. Partners, LLC*, No. 4:15-CV-00857, 2016 WL 7326622, at *4 (E.D. Tex. Dec. 16, 2016) (granting plaintiff's motion for partial summary judgment and ordering defendants to submit a detailed remedial plan identifying how they planned to remedy all FHA violations, including those that were revealed only by the expert's inspection of the complex)).

In arguing that Bowman cannot meet the injury in fact requirement, Defendants rely heavily on a district court opinion out of Tennessee that also involved Bowman. *See Bowman v. Kisan, LLC*, No. 3:13-cv-0630, 2014 WL 6605605 (M.D. Tenn. Nov. 19, 2014). In *Kisan*, Bowman claimed that he had called a Nashville area hotel and inquired whether the hotel pool had a lift or other means of access for disabled persons. *See id.* at *1. After reportedly being told that the hotel pool did not have a lift, Bowman filed suit under the ADA. *See id.* It turned out that, at the time of Bowman's phone call, the pool was out of service for ongoing repairs. *See id.* at *3. The district court granted the defendant's motion to dismiss after determining that, because "Bowman did

13

not physically encounter any barriers and did not acquire 'actual knowledge' of any barriers," he did not suffer an injury in fact; therefore, he lacked standing under Article III. *Id.* Although *Kisan* involves the same plaintiff as this case, the similarities end there. Here, it is undisputed that Bowman actually visited the premises, and that he personally encountered and observed barriers to access while touring the Property. None of that happened in *Kisan*. Bowman has, thus, established that he was personally affected by the alleged FHA violations.

To be clear, Bowman would have serious standing issues if (1) he never visited the property but still sought to bring a claim for affirmative relief, or (2) he visited the Property but failed to encounter any accessibility issues during his time on site. But neither of those situations occurred in this case.

It is important to remember that the purpose of the FHA is to "eradicate discriminatory practices within [the housing] sector of our Nation's economy." *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 539 (2015). "[A] narrow standing rule . . . which limits liability . . . solely to previously known barriers to access, defeats the remedial purposes of the [FHA] and places disabled persons in the unreasonable position of having to overcome unlawful access barriers in a serial, seriatim fashion." *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 194 (M.D. Pa. 2011). This point is perfectly illustrated by the Eighth Circuit's decision in *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000), which I find instructive.

In *Steger*, several plaintiffs filed suit to compel a defendant to bring one of its buildings into compliance with the ADA. *See id.* at 891. One of the plaintiffs, Patrick

Burch, was a blind man who specifically alleged that he was unable to access the men's restroom in the defendant's building due to inadequate signage. *See id.* at 891–92. In addition to Burch's personal experience with the inadequate signage, Burch secured an expert witness who presented evidence that the defendant's building contained many additional ADA violations, but only some of those violations impacted blind persons. *See id.* at 893–94. The defendant corrected the building signage outside its restrooms during the course of litigation, leading "the district court [to] dismiss[] [Burch's] claim on the ground that his injury had been redressed." *Id.* at 893. On appeal, Burch argued that "he ha[d] standing to seek relief for all ADA violations in the [defendant's building], including those unrelated to his disability." *Id.* The defendant, on the other hand, argued that the district court correctly construed Burch's injury as "limited solely to the first floor men's restroom, and that because the signage at the restroom [had come into compliance] with the ADA," Burch's injury had been redressed, his claim mooted, and the case properly dismissed. *Id.* The Eighth Circuit disagreed in part with both parties and held that although Burch lacked standing to challenge the ADA violations unrelated to his particular disability (blindness), he had "standing to seek relief for any ADA violations in the [building] affecting his specific disability." *Id.* at 894. In reaching this conclusion, the Eighth Circuit astutely observed that

> [t]he effect of . . . a rule [limiting the plaintiff's standing to the signage barrier he personally encountered and forbidding the plaintiff from challenging other barriers related to his disability] would be piecemeal compliance [with the ADA]. To compel a building's ADA compliance, numerous blind plaintiffs, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier encountered until all barriers had been removed. This not only would be inefficient, but impractical.

15

*Id.* I adopt the Eighth Circuit's analysis and reasoning here.[3]

I, therefore, conclude that a plaintiff alleging discrimination on account of an access barrier under the FHA must establish an injury in fact by showing that he actually encountered an access barrier affecting his disability. Once the plaintiff satisfies the injury in fact requirement, the plaintiff may seek relief for any FHA violations on the premises affecting his specific disability and need not personally encounter every barrier to obtain effective relief. *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) ("So long as there is an actual or imminent injury from a barrier encountered or about which a person had knowledge, . . . the disabled person has standing to enter our court system. The scope of discovery and claims should then naturally permit challenge to any barriers to use related to that person's disability."); *McConnell*, 280 F.R.D. at 194 (explaining that because plaintiff "identified particular barriers to access at a facility, he is entitled to litigate, and seek discovery regarding, all barriers presented at this facility"); *Access 4 All, Inc. v. Absecon Hosp. Corp.*, No. CIV A 04-6060 JEI, 2006 WL 3109966, at *9 (D.N.J. Oct. 30, 2006) (holding that a plaintiff has standing to seek relief for any accessibility barriers that he personally encountered, as well as barriers relevant to his disability that he did not encounter).

Applying this standing test to the instant action, I find that Bowman has suffered an injury in fact by encountering barriers to access at the Property. No further harm or injury needs to exist for Bowman to have Article III standing to bring a design and construction claim under the FHA. Bowman is therefore entitled to litigate all FHA

---

[3] Although *Steger* is an ADA case, not a FHA case, that is a distinction without a difference. As Defendants readily acknowledge, "[i]t is well-settled that the same Article III requirements that apply to ADA cases also apply in FHA cases." Dkt. 44 at 3.

violations that limit his access to the Property, even if he did not personally encounter the barrier on his visit to the Property. *See Frame v. City of Arlington*, 657 F.3d 215, 235–36 (5th Cir. 2011) (holding that plaintiff had standing to sue over barriers not initially encountered, even including sidewalks that had not yet been built, if he could show a high likelihood that he would be denied the benefits once the feature was built). Any other conclusion would "literally invite plaintiffs in these cases to run a physical and metaphysical gauntlet when litigating disability claims." *McConnell*, 280 F.R.D. at 195.

## BOWMAN'S MOTION FOR SUMMARY JUDGMENT

Now that I have determined that Bowman has standing to sue under the FHA, I turn to Bowman's request that I enter summary judgment in his favor on the undisputed violations of the FHA.

Bowman presented a detailed declaration from his expert witness, Fleming, along with a copy of Fleming's expert report, to support his partial motion for summary judgment. In short, Fleming contends that various areas at the Property do not meet FHA design and construction requirements and are not accessible to people with disabilities. Defendants do not contest 77 of the FHA violations pointed out by Fleming. The violations that are not in dispute are those identified in the Fleming Report as nos. 7, 9, 10, 18–19, 29, 31–70, and 72–102.[4]

---

[4] In his motion for partial summary judgment, Bowman claimed that 80 FHA violations were undisputed. Defendants, however, submitted summary judgment evidence in the form of a declaration from its expert witness disputing three items—item nos. 16, 20, and 30. Because there is unquestionably a factual dispute with respect to these three items, summary judgment is not appropriate on item nos. 16, 20, and 30. As a side note, Defendants also argued that there was a factual dispute as to whether item no. 70 was unrebutted, but Bowman's motion never claimed that item no. 70 was undisputed.

Defendants argue that summary judgment is not proper with respect to item nos. 7, 9, 10, 18–19, 29, and 32–33 because they have already taken actions to redress these alleged FHA violations. To support this argument, Defendants have submitted the declaration of Miguel Prida ("Prida"), an officer and corporate representative of Defendants who maintains that he is personally familiar with the operations and procedures employed at the Property. Prida states that item nos. 7, 9, 10, 18–19, 29, and 32–33 "have been addressed to resolve the concerns raised by Mr. Fleming's report." Dkt. 40-1 at 3. Bowman objects to this portion of Prida's declaration, arguing that "[t]his vague and conclusory statement that certain items 'have been addressed' should be disregarded." Dkt. 42 at 9. I respectfully disagree. In my view, the Prida declaration submitted in opposition to the motion for summary judgment satisfies the evidentiary requirements: it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

Prida's declaration provides me with some evidence that Defendants have remedied item nos. 7, 9, 10, 18–19, 29, and 32–33. This is important because it is well-established that a request for injunctive relief is moot when the event sought to be enjoined has occurred and meaningful relief is not available. *See Ctr. For Biological Diversity v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) ("Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff."); *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998) ("[W]e find it beyond dispute that a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined."). To be clear, I

do not know if the alleged violations have been remedied, but the Prida declaration raises a genuine issue of material fact. Viewing the facts here in the light most favorable to Bowman as the nonmovant, as I am required to do at the summary judgment stage, I am simply unable to grant summary judgment on Bowman's request for injunctive relief on item nos. 7, 9, 10, 18–19, 29 and 32–33. *See Dameware Dev., L.L.C. v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 206–207 (5th Cir. 2012).

It should surprise absolutely no one that "[s]ummary judgment as to liability is . . . appropriate [in a FHA case] where a defendant admits to the alleged violations." *W. Rim Invs. 2013-3, L.P.*, 2017 WL 6734175, at *3 (collecting cases); *RLB Inv. Partners, LLC*, 2016 WL 7326622, at *4 (same). Because there is no dispute here that item nos. 31, 34–70, and 72–102 constitute FHA violations, I recommend that summary judgment be entered in favor of Bowman and against Defendants on these items.

## CONCLUSION

For the reasons explained above, I recommend that Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law in Support Thereof (Dkt. 36) be **GRANTED in part and DENIED in part**, and Defendants' Motion for Partial Summary Judgment (Dkt. 37) be **DENIED**.

I further recommend that Defendants be required to submit a detailed remedial plan identifying how Defendants will remedy the following FHA violations: item nos. 31, 34–70, and 72–102. The remedial plan should be submitted within 30 days of the issuance of the order adopting this Memorandum and Recommendation.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written

objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 8th day of October 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE