United States District Court
Southern District of Texas
**ENTERED**
October 20, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:19-cv-66

DANA BOWMAN, *PLAINTIFF*,

v.

PRIDA CONSTRUCTION, INC., ET AL, *DEFENDANTS*.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is plaintiff Dana Bowman's motion for attorneys' fees, expert fees, and costs and expenses under the Fair Housing Act and Americans with Disabilities Act. Dkt. 78. Bowman seeks $159,308.75 in attorneys' fees, $9,993.91 in expert fees, and $3,176.01 in costs and expenses. Dkt. 78 at 16–17; Dkt. 87 at 15. Defendants Prida Construction, Inc., and Waterfront Housing, LLC, oppose the award on six grounds: (1) attorneys' fees are discretionary under 42 U.S.C. § 3613; (2) Bowman's requested hourly rate is excessive; (3) Bowman did not present sufficient evidence of billing judgment; (4) Bowman's billing entries are excessive, redundant, and demonstrate a lack of billing judgment; (5) the *Johnson* factors warrant a

downward departure from the lodestar amount; and (6) an award of expert fees is not allowed under 42 U.S.C. § 3613. Dkt. 81 at 3. For the reasons that follow, the court awards Bowman attorneys' fees of $79,213.75, expert fees of $9,993.91, and costs of $3,176.01.

## I. Background

Dana Bowman sued Prida Construction and Waterfront Housing for violations of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. §§ 3601–3619, complaining of lack of accessibility at the Waterfront Apartments in Galveston. After almost two years of litigation and following a partial summary judgment, Dkt. 68, the court signed an agreed judgment ordering the defendants to remediate 96 categories of barriers to access. Dkt. 74. The court found, and the parties agreed, that the plaintiff is the "prevailing party" and therefore entitled to recover reasonable attorneys' fees, expert fees, costs and expenses. *Id.* at 2. The sole remaining issue is the amount of the award for attorneys' fees, expert fees, and costs.

## II. Attorneys' Fees

### A. Discretionary Basis

The defendants argue that because the award of attorneys' fees under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12205, and the FHA,

42 U.S.C. § 3613(c)(2), is discretionary, the court should "use its discretion to deny Plaintiff's request for fees or to award a nominal amount." Dkt. 81 at 3. In support, the defendants note that Bowman and his attorney are serial ADA/FHA litigants with "hundreds of cases to their names." *Id.* This case, the defendants allege, was one of ten "drive-by lawsuits" Bowman filed in the first four months of 2019. *Id.* at 1–3. But that is beside the point. Bowman is the undisputed prevailing party whose meritorious legal arguments resulted in broad remediation at the Waterfront Apartments.

While the decision to award attorneys' fees "lies solely within the discretion of the court," *La. ACORN Fair Hous. v. Jaffe*, No. CIV. A. 00-0019, 2000 WL 1610628, at *2 (E.D. La. Oct. 26, 2000), the Supreme Court has cautioned that "[t]his discretion . . . must be exercised in light of the considerations we have identified." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Fifth Circuit, in interpreting this guidance, has made it clear that the district court's "broad discretion" is in "setting the appropriate award of attorneys' fees" due to its "superior knowledge of the facts," not in failing to award a prevailing party fees or awarding only nominal fees. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). So the defendants' first contention is unpersuasive.

## B. Lodestar Calculations

As a preliminary matter, the "method by which the district court calculates an attorneys' fees award is well established." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). A "lodestar" amount is determined by multiplying the reasonably billed hours by a reasonable hourly rate. *Id.* In exceptional cases, the lodestar may be adjusted upward or downward, according to the factors identified in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717–19 (5th Cir. 1974).

### i. Reasonable Rate

Bowman's attorney, Eric G. Calhoun, is a seasoned attorney with over 30 years of legal practice and extensive experience in FHA/ADA cases. Dkt. 78-1. His practice is based in Dallas County in the Northern District of Texas. Dkt. 78-2. Mr. Calhoun asks for $650, his hourly rate for "complex litigation." Dkt. 78-1 at 4, ¶ 8. The defendants contend that rate is excessive. Dkt. 81 at 3. In determining an hourly rate, the district court bases its decision on the "prevailing market rates in the relevant community." *LULAC*, 119 F.3d at 1234 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). The "burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. The Fifth Circuit "has interpreted rates 'prevailing in the community' to mean what it says," namely that district courts are required to consider the local rates for similar work "in the community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

Tellingly, this Circuit has reduced an out-of-district counsel's fee from his home district in Washington, D.C., to the prevailing forum rate in Austin, Texas, despite his success at trial, because local counsel was not only available but had "provided competent and skilled representation." *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000). But when there is "abundant and uncontradicted evidence prov[ing] the necessity of . . . turning to out-of-district counsel," said counsel may have their home-district rates considered as a "starting point for calculating the lodestar amount." *McClain*, 649 F.3d at 382.

Nevertheless, the district court retains the discretion to adjust the lodestar to achieve an overall reasonable award, keeping in mind that while the forum rate "sets a floor for compensation," the purpose of a fee-shifting statute is likewise undermined if plaintiff's counsel "reap a windfall at the expense of a defendant by overcharging for their services." *Id.*; *see Riverside*

*v. Rivera,* 477 U.S. 561, 580 (1986) ("Congress intended that statutory fee awards be adequate to attract competent counsel, but . . . not produce windfalls to attorneys") (internal quotation omitted).

Two findings militate against awarding plaintiff's counsel his home-district rate. First, Bowman's counsel has failed to establish what his customary rate is for FHA/ADA claims in the Northern District. While Mr. Calhoun states his hourly rate for complex litigation is $650, Dkt. 78-1 ¶ 8 (Calhoun Declaration), his only evidence of this is a Dallas state-court case involving a stock-subscription agreement. Dkt. 90 at 2. The court agrees with the defendants that Mr. Calhoun's work in that Dallas case is distinguishable because it was not an FHA/ADA case and required materially more complex work than the form pleadings in the present case. Dkt. 91 at 1–2.

Additionally, the plaintiff has failed to establish with "abundant and uncontradicted evidence" that it was necessary to turn to out-of-district counsel, such as Mr. Calhoun, over other counsel in the local forum. *McClain*, 649 F.3d at 382. Mr. Calhoun's chief evidence for the contention that he alone could provide the necessary competent and skilled representation is his own declaration, Dkt. 78-1 ¶¶ 4,7 ("There are no Plaintiff attorneys in Galveston, Texas that specialize in enforcement of the FHA").

Yet, Mr. Calhoun overlooks the rest of the Southern District. While

Galveston *may* lack attorneys whose experience is comparable to his in FHA/ADA cases, Houston—just 50 miles away—does not. The court takes judicial notice of an abundance of FHA and ADA suits handled by attorneys in the Houston area—and takes notice that Houston lawyers regularly practice in the Galveston Division. Accordingly, the court finds Houston as the relevant local market for consideration of the prevailing market rate for FHA work. *McClain*, 649 F.3d at 381.

As evidence of the prevailing market rate for complex litigation in Houston, Mr. Calhoun proffers the affidavit of an attorney well-known and well-regarded by this court, Craig Smyser, from a separate case. Dkt. 78-5. But the case which Mr. Smyser's affidavit concerns is substantially dissimilar from this one. A "well-known and highly publicized class action lawsuit questioning Harris County's" secured money bail system, it is demonstrably more complex than the form pleadings, motions, and discovery required by this FHA suit. Dkt. 81-1 at 5. Meanwhile, in an affidavit by another attorney well-known and well-regarded by this court, Fred Raschke, the defendants have presented uncontroverted evidence that the customary fee in Galveston for cases like this is $175 to $300 per hour. Dkt. 81-1 at 8. As Mr. Raschke also notes that "the rates charged in Houston are, on average, much higher than in Galveston," *id.* at 6, the court will add a $200/hour premium to the

upper end of the defendants' proposed range and find that $500 is a reasonable hourly rate.

### ii. Reasonably Billed Hours

#### a. Billing Judgment, Duplication of Effort, and Excessive Hours

Bowman asks for 237.1 attorney hours and 41.55 legal support hours for its lodestar calculation.[1] The defendants contest Bowman's billed hours, arguing (1) Bowman did not present sufficient evidence of billing judgment and (2) that his billing entries were excessive, redundant, and displayed a lack of billing judgment. Dkt. 81 at 3. Plaintiffs submitting fee requests are required to exercise billing judgment, which "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The plaintiff must present "documentation of the hours charged" and of those "written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker*, 99 F.3d at 770.

---

[1] This number is the sum of 216.2 initial attorney hours supplemented by 20.9 attorney hours for the preparation of a reply brief, and 25.8 initial paralegal hours plus 15.75 supplemental hours. Dkt. 78 at 16; Dkt. 87-7.

After reviewing Bowman's complete billing entries, the court finds a lack of billing judgment. The plaintiff's original billing entries contain no hours written off as unproductive, excessive, or redundant. Dkt. 78-3. Out of more than $143,000 in billed attorney and paralegal fees, there are no hours written off as uncharged. Dkt. 78-3.[2] The plaintiff's failure to present credible evidence of writing off "unproductive, excessive, or redundant hours" is sufficient to establish a lack of billing judgment for the original attorneys' fees submission. *Walker*, 99 F.3d at 769–70; *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *3 (N.D. Tex. Feb. 11, 2011) ("The Fifth Circuit has repeatedly determined that bald assertions regarding the exercise of billing judgment are insufficient.").

The defendants have also pointed out myriad examples of redundant or excessive billing and criticize the requested hours as excessive. Dkt. 81-3. A comprehensive review of the plaintiff's billing entries shows that the criticism of most of these line items have merit, while a small few do not. *See*

---

[2] After the defendants challenged Mr. Calhoun in their response in opposition to the motion for fees, Dkt. 81 at 20 ("billing judgment should be proved with evidence of the actual hours written off in addition to the hours claimed"), he began writing off hours in his next series of billing entries concerning the preparation of the reply brief. Dkt. 87-7 (1.3 hours written off from 22.2 attorney hours; 4.2 paralegal hours from 19.95). Before then, Mr. Calhoun explained, he "did not bill a substantial amount of the time spent in this case," instead opting to reduce the number of hours billed as recorded on the above time entries. Dkt. 87 ¶ 4.

Dkt. 87-2 (Comments and Reply by Parties as to the Original Billing Entries). The pertinent issue throughout the billing entries is the curious juxtaposition of the plaintiff's attorney's extensive experience in FHA cases with what appears to be excessive time spent on routine, formulaic tasks for an unexceptional case that had no depositions, no attorney inspection of the subject property, no in-person hearings save for the initial scheduling conference, and was prosecuted primarily through recycled boilerplate pleadings. *See* Dkt. 81 at 8–9.

For example, the time spent on reviewing and revising a notice of inspection that is a near word-for-word reproduction from the same used in Mr. Calhoun's dozens of other FHA cases (0.5 hours) is questionable considering the initial draft took only 0.2 legal-support hours. Dkt. 87-2 at 2. What is more egregious is the attorney time, billed at $650/hour, reviewing photos and researching the Waterfront Apartments and ownership (1.5 hours) and additional research regarding parties and ownership (2.0 hours), tasks far more appropriate for a paralegal to perform. *Id.* at 1. Curiously, and perhaps indicative of the complexity or lack thereof in this case, the complaint took only 30 minutes to prepare. *Id.* The time to review and revise word-for-word reproductions of the same draft discovery (3.0 hours) is likewise problematic. *Id.* at 3–5 (billing entries for 4/1, 4/4,

and 4/5/2019); *see, e.g.*, Dkt. 81 at 8–9 (comparison of interrogatories and other discovery requests from the present case and previous cases).

Further, Mr. Calhoun billed both attorney and paralegal time for the time spent preparing and finalizing a motion to appear telephonically for the initial scheduling conference—that was subsequently denied. Dkt. 87-2 at 7–8. When Mr. Calhoun did travel to Galveston for the scheduling conference, he billed 7.5 hours at the full rate. Dkt. 87-2 at 12 (billing entry for 5/15/2019). In this Circuit, time spent traveling should be billed at a lesser rate than active legal work. *Watkins,* 7 F.3d at 459; *Hopwood*, 236 F.3d at 263 (affirming reduction of travel hours by one-half); *In re Babcock & Wilcox Co.*, 526 F.3d 824, 829 (5th Cir. 2008) (same). If Mr. Calhoun was actively working on legal matters while traveling, he did not meet his burden to show it by way of his billing entries.

Mr. Calhoun would have the court believe that he spent 12 minutes (0.2 hours) reviewing the court's Notice of Reassignment, at a total cost of $130 or slightly over $2 per word). Dkt. 27. Likewise: 0.4 hours spent reviewing summons requested by plaintiff's counsel and local court rules (2/15/2019), 0.2 hours spent reviewing a one-sentence Notice of Referral for a Motion for Misc. Relief (5/7/2019), 0.2 hours spent reviewing a three-sentence order (6/13/2019), 0.2 hours spent reviewing a 2-sentence order (11/12/2019), 0.5

hours spent reading and calendaring a two-page docket-control order (5/16/2019). Dkt. 78-3. This list is not exhaustive but represents just the padding of reviewing court orders and notices evident in the first three pages of billing entries. *Id.*

In cases with excessive and duplicative billing entries, "[c]ourts have substantially reduced attorney's fee awards for work product that was copied or derived from prior work in similar cases." *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *6 (W.D. Tex. Jan. 3, 2019) (collecting cases). In *Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012), the court reduced the fee award when the plaintiff's law firm charged excessive time for essentially tailoring a form. *See also Jones v. RK Enterprises of Blytheville, Inc.*, 3:13-CV-00252-BRW, 2016 WL 1091094, at *3 (E.D. Ark. Mar. 21, 2016) (same). Courts have also substantially reduced fee awards where the attorney was highly experienced in the type of case at issue. *See, e.g., Mark v. Sunshine Plaza, Inc.,* No. CV 16-455, 2018 WL 1282414, at *6–7 (E.D. La. Mar. 12, 2018).

Bowman's billing habits are characteristic of the cases mentioned above, representing excessive and redundant billing entries for tasks accomplished by submitting form pleadings and discovery requests

substantially identical to what plaintiff's counsel has used in his dozens of past FHA cases. *See* Dkt. 81-4 at 4. The billing entries are likewise peppered with duplicative "reviewing" and "revising" of documents that plaintiff's counsel should have written off as unproductive, excessive, or redundant given his extensive experience in FHA cases. *See* Dkt. 81 at 23. The court agrees that the hours billed for these tasks were excessive and duplicative and that they should be reduced.

### b. Clerical Work

"Purely clerical or secretarial tasks should not be billed at a paralegal rate," let alone an attorney rate, "regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). "Work completed by a paralegal may only be recovered if it is similar to the work typically completed by attorneys; 'otherwise, it is an unrecoverable overhead cost.'" *Cty. of Dimmit v. Helmerich & Payne Int'l Drilling Co.*, No. SA-16-CV-01049-RCL, 2018 WL 1095585, at *3 (W.D. Tex. Feb. 27, 2018) (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)). Legal tasks that may be performed by a paralegal and billed accordingly include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting

correspondence." *Missouri*, 491 U.S. at 288 n.10.

Clerical work, or secretarial tasks, include the "filing of legal documents, the calendaring of events, and communications regarding scheduling issues." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at *5 (E.D. Tex. Apr. 3, 2018); *see Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 WL 2175637, at *6 (E.D. Tex. July 20, 2009), *aff'd*, 394 Fed. App'x 38 (5th Cir. 2010) (citation omitted) (finding that basic communications and case organization are "largely clerical or housekeeping matters and not legal work"). Preparing, assembling, and redacting documents and exhibits, including affixing labels, are likewise clerical. *Fralick*, 2011 WL 487754, at *8.

The court finds time entries included in the plaintiff's attorneys' fee request that appear clerical in nature. Dkt. 78-3 (multiple examples of clerical work: composing emails/correspondence (13.1 hours),[3] calendaring (0.7 hours), and multiple mentions of filing documents, handling exhibits, and Bates labeling that all appear largely clerical). A reduction in plaintiff's

---

[3] Correspondence and email may well fall into both legal and clerical categories depending on how routine the correspondence was. Because of the ambiguity in the billing entries, the more appropriate solution (instead of just cutting all the hours) is a percentage reduction off the top of the reasonable hours' calculation.

counsel's billable hours for this clerical work is appropriate. But rather than both disallowing the time billed for clerical work and assessing an overall percentage reduction, the court will do only the latter.

To account for plaintiff's counsel's inappropriate billing, the defendants request an attorney's fee award of no more than 88.5 hours of attorney time and 16.10 hours of paralegal time—an approximate 60% cut to the overall hours. Dkt. 81 at 25. The court finds a 40% reduction to be more reasonable, accounting for the lack of billing judgment, the excessive and duplicative entries, and for billing clerical work. *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (50% reduction); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 988 n.22 (S.D. Tex. 1997) (same); *Yelton v. PHI Inc.*, 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012) (same); *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 514 (E.D. La. 2018) (65% reduction).

### iii. Lodestar Amount

Based on the findings above, the lodestar amount is $79,213.75, as detailed in the following charts.

| | Initial Attorneys' Fees | | | | | |
|---|---|---|---|---|---|---|
| | Hours Claimed | Rate Requested | Total Fee Requested | Hours Approved (40% reduction) | Rate Approved | Total Fee Approved |
| Attorney | 216.20 | $650 | $140,530.00 | 129.72 | $500 | $64,860.00 |
| Paralegal | 25.80 | $125 | $3,225.00 | 15.48 | $125 | $1,935.00 |
| TOTAL | 242 | | $143,755 | 145.2 | | $66,795.00 |

| | Additional Attorney's Fees (Reply Brief) | | | | | |
|---|---|---|---|---|---|---|
| | Hours Claimed | Rate Requested | Total Fee Requested | Hours Approved (No Reduction)[4] | Rate Approved | Total Fee Approved |
| Attorney | 20.90 | $650 | $13,585.00 | 20.90 | $500 | $10,450.00 |
| Paralegal | 15.75 | $125 | $1,968.75 | 15.75 | $125 | $1,968.75 |
| TOTAL | 36.65 | | $15,553.75 | 36.65 | | $12,418.75 |

| Combined Fees | |
|---|---|
| Initial Fees | $66,795.00 |
| Additional Fees | $12,418.75 |
| TOTAL | $79,213.75 |

## C. *Johnson* Factors

"Adjustment of the lodestar in this Circuit involves the assessment of a dozen factors," *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995), as identified in *Johnson v. Georgia Highway Express, Inc..* 488 F.2d 714 (5th Cir.1974).[5] "The lodestar is presumed to reflect a

---

[4] Bowman substantially tightened up his shot group in his later billing entries. Accordingly, no reduction is necessary.

[5] The factors include: 1) the time and labor required for the litigation; 2) the novelty and complication of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorney had to refuse other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable;" 11) the type of attorney-client relationship

reasonable attorneys' fee award, but the district court may adjust it upward or downward in exceptional cases." *LULAC*, 119 F.3d at 1232. "There is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden of 'showing that such an adjustment is *necessary* to the determination of a reasonable fee.'" *Walker*, 99 F.3d at 771 (quoting *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)).

The Supreme Court has barred any use of the sixth factor, *Burlington,* 505 U.S. at 567 (holding the contingent nature of a case cannot serve as the basis for enhancement of a fee award), and greatly limited the use of the second, third, eight, and ninth factors. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986) (noting these factors are presumably subsumed into the lodestar amount). Nevertheless, the remaining factors as addressed by the plaintiff and defendants are either unpersuasive or have already been considered in calculating the lodestar. *See Blum*, 465 U.S. at 898. The court therefore makes no adjustment to the lodestar.

---

and whether that relationship was long-standing; and 12) awards made in similar cases. *Johnson*, 488 F.2d at 717–19.

### III. Expert Fees and Other Costs and Expenses

#### a. Expert Fees

The court's agreed judgment, based on the parties' joint motion, expressly states that "[f]or the purposes of 42 U.S.C. §§ 3613(c)(2) and 12205, the plaintiff is the prevailing party in this action, and is entitled to seek by separate motion an award of reasonable attorneys' fees, expert fees, costs and expenses in an amount to be determined by the court." Dkt. 74 at 2. Accordingly, Bowman is a prevailing party under both fee-shifting statutes. While § 3613(c)(2) does not authorize the fee-shifting of expert fees, *El Paso Apartment Ass'n v. City of El Paso*, No. EP-08-CV-145-DB, 2010 WL 11506565, at *4 (W.D. Tex. Feb. 10, 2010), that is not the case for § 12205. Under § 12205 "the prevailing plaintiff in a civil rights action is entitled to recover its reasonable litigation expenses." *Gilmore v. Elmwood S., L.L.C.*, No. CIV.A. 13-37, 2015 WL 1245770, at *6 (E.D. La. Mar. 18, 2015). This includes expert witness fees. *Id.* at *7; *Jones v. White*, No. CIV.A. H-03-2286, 2007 WL 2427976, at *8 (S.D. Tex. Aug. 22, 2007); *Audubon Nature*, 353 F. Supp. at 517.

The court has reviewed the materials concerning Larry B. Fleming's expert-witness fees, including his declaration, Dkt. 78-6, and the breakdown of his expenses by invoice and receipt, Dkt. 78-7 to 78-11. The court finds

them reasonable and necessarily incurred in the amount of $9,993.91.

### b. Other Costs and Expenses

The court has reviewed the plaintiff's other costs and expenses, Dkt. 78-4, and finds them reasonable and necessarily incurred in the amount of $3,176.01.

\*   \*   \*

For all these reasons, the plaintiff's motion for award of attorneys' fees and expenses, Dkt. 78, is granted in part and denied in part. The plaintiff is awarded $92,383.67 (attorneys' fees of $79,213.75, expert fees of $9,993.91, and costs of $3,176.01).

Signed on Galveston Island this 20th day of October, 2021.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE